**Agwukwu B. OFUDU, Plaintiff,**

v.

**BARR LABORATORIES, INC., Defendant.**

**No. 98Civ. 5714(CM).**

United States District Court, S.D. New York.

June 2, 2000.

Isaac N. Okoro, Jamaica, New York, for plaintiff.

Richard K. Walker, Peter C. Prynkiewicz, Streich Lang, P.C., Phoenix, Arizona, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Agawukwu Ofudu brought an action for race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, against his former employer, Defendant Barr Laboratories, Inc. Defendant has moved pursuant to Fed. R.Civ.P. 56 to strike portions of Plaintiff's Statement of Facts in support of his opposition to Defendant's motion for summary judgment and for summary judgment. For the reasons that follow, Defendant's motion to strike is granted in part, and its motion for summary judgment is granted.

### FACTS

The following facts are undisputed except where noted.

Plaintiff, who holds a masters degree from Fisk University, was employed by Defendant as a quality control analyst beginning in July 1994. Despite Plaintiff's wholly conclusory statements to the contrary (see below), the record reveals that,

starting almost from the outset of his employment, Plaintiff's job performance in several areas, including interpersonal relations, was deemed deficient by his supervisors. Defendant's dissatisfaction was reflected in Plaintiff's performance reviews over the three years of his employment with Defendant. (*See* Defendant's Exhibit C, Mid–Year Performance Review; Def. Exh. D, Additional Comments: Performance of Benjamin Ofudu and Annual Performance Evaluation; Def.Exh. J., Annual Performance Review; Def.Exh. U., Mid–Year Performance Review; Def.Exh. X, Annual Performance Review; Def.Exh. Z, Annual Performance Review.)

In an effort to salvage Plaintiff's job, Defendant provided him with additional training. Plaintiff, however, attributes the imposition of this training to racial animosity and describes it as "oppressive." But Plaintiff fails to identify a single racially derogatory remark or other incident to suggest that the training was motivated or characterized by racial animus.

Plaintiff was urged to report any perceived incidents of discrimination to the Human Resources Department. (*See* Mem. from Jennifer Gillespie to Pl., dated Oct. 16, 1995 Ex. H; *see also* Higgins' Decl.Ex. A ¶ 11; Ex. I.) Accordingly, he sent a number of memoranda complaining about his treatment, but by his own admission (*see* Pl.'s Rule 56.1 statement at 39), he impeded Defendant's ability to investigate his complaints by refusing to identify any individuals who perpetrated discriminatory acts against him. (*See* Pl.'s Dep. Ex. E at 160, Ln. 11 to 161, Ln. 7.) As a result, his complaints were dismissed as unfounded—which Plaintiff believes was a further act of discrimination. (*See* Pl.'s SOF ¶ 13.)

Ultimately, these remedial measures were to no avail, and, citing the combination of lack of improvement in his job performance, Plaintiff's excessive need for attention and the increasing tension in the workplace as a result of what can only be described as Plaintiff's paranoia, Defendant terminated Plaintiff. (*See* Baker Decl.Ex. V ¶¶ 4–9.) Again, Plaintiff believes that the complaints about his performance (which he acknowledges) were unwarranted and a pretext for race discrimination, but he does not specify what factors led him to that conclusion—other than the fact that he was black in an overwhelmingly white and Asian work environment, and that three other black professionals who were on staff when he was hired were no longer on staff when he was fired. (*See* Compl., attached Documentary Evidence in Chronological Order ¶ 33, received June 17, 1998.)

## CONCLUSIONS OF LAW

### (1) *Defendant's Motion to Strike*

The Court adopts as its findings of undisputed fact the proposed findings contained in the Rule 56.1 statement filed by Defendant in support of its motion, all of which are supported by the evidence submitted in conjunction therewith.

The Court has reviewed Plaintiff's Rule 56.1 counter-statement. Evidentiary support for the statements contained therein is, for the most part, not identified. The statement contains many conclusory remarks that are simply not consonant with the record. For example, Statement # 6, which says, "Plaintiff received an annual performance review for 1995 and 1996 which were not unsatisfactory," is contradicted by the performance reviews themselves, which indicate that Plaintiff needed to improve in numerous categories. Plaintiff cannot raise a genuine issue of fact by asserting that the contents of a document are other than what they are. Other statements, like # 11, which says, "Plaintiff worked in the midst of several other racial groups and ethnicities who formed and operated along racial lines and ethnicities," or # 13, ". . . when Defendant employer's supervisors attempted to address these unlawful discriminatory conducts, harassment, retaliation, etc., they only had and sought to achieve a narrow goal of

sweeping these unlawful conducts under the carpet ..." are purely conclusory, do not set forth specific facts, and are proffered without any evidentiary support.

Indeed, the Rule 56.1 Statement appears to be the statement of counsel, as it is argumentative without demonstrating any personal knowledge of the matters set forth therein. (I hesitate to use the word "facts" because so many of the entries in the Rule 56.1 Statement are obviously opinions or arguments). Plaintiff has not submitted an affidavit or any documentary evidence except for the conclusory memos he wrote while on the job, which document his complaints, but prove nothing.

Defendant has moved to strike a number of individual entries from the Rule 56.1 Statement on these very grounds. Plaintiff's response to this motion is wholly unsatisfactory, in that it does not cure, or even acknowledge the obvious deficiencies in the Statement. Accordingly, I grant Defendant's motion to the extent of striking the following statements for the reasons set forth in the moving papers or as noted below: Paragraphs 4 (on the ground that the allegedly supporting deposition material is not attached to the papers), 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 (on the ground that the attached deposition testimony, which I have reviewed, does not contain the statements Plaintiff says they contain), 23 and 24 (as supported only by Plaintiff's conclusory statements in the attached exhibits, and not by either sworn testimony or by evidence of specific incidents), 26 (to the extent of the third sentence), 29 (as lacking any supporting citation), 30, 33 and 34 (which deal with the alleged inadequacy of the evidence provided by Defendant and demonstrate an appalling lack of understanding of the summary judgment process by Plaintiff's counsel, who seems to think it inappropriate to provide the Court with sworn declarations as required by Rule 56 jurisprudence), 37, 42, 45, 46 (allegedly supporting deposition material not attached to papers), 47, 48, 52 and 54

(conclusory statements lacking any supporting evidence).

This leaves the Court with very little in the way of evidentiary material from Plaintiff to go on. As discussed below, however, even if I accept the remaining Rule 56.1 statements as true, they do not raise any genuine issue of material fact for trial.

### (2) Defendant's Motion for Summary Judgment

#### (a) Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although it is not the Court's task to weigh the evidence, it must "determine whether there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202, by determining if there is sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. *See id.* at 249–50, 106 S.Ct. 2505.

The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor." *Fondo v. Memorial Hospital,*

1988 WL 142469 (S.D.N.Y.) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "For a plaintiff in a discrimination case to survive a motion for summary judgment, he must offer 'concrete particulars' to substantiate the claim." *Whidbee v. McDonald's Corp.*, 75 F.Supp.2d 183 (S.D.N.Y.1999) (citing *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.1985), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)). "A court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir.1999) (citations omitted).

### (b) *Burden–Shifting Analysis in Title VII Cases*

Title VII forbids an employer from intentionally discriminating against an employee because of that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a) (West 2000). Additionally, Title VII protects employees from retaliation: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Finally, in states such as New York that have an agency charged with handling discrimination complaints, the statute of limitations for filing a charge with the EEOC is 300 days. *See* 42 U.S.C. § 2000e–5(e)(1).

Normally, discriminatory treatment is proven pursuant to the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *See St. Mary's*, 509 U.S. at 506, 113 S.Ct. 2742; *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir.1999). Plaintiff's burden at this point is "minimal," *St. Mary's*, 509 U.S. at 506, 113 S.Ct. 2742, merely establishing an inference of discrimination. *See Zahorik v. Cornell University*, 729 F.2d 85, 92 (2d Cir.1984). However, establishment of the prima facie case creates a presumption of discrimination. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089.

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant-employer to put forth some legitimate, non-discriminatory reasons for the alleged acts of discrimination. *See Fisher v. Vassar College*, 114 F.3d 1332, 1335–36 (2d Cir.1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Defendant's burden of production is not demanding; any legitimate, non-discriminatory reason will rebut the presumption. *See Id.* at 1335–36. If the employer presents this evidence, the burden of production shifts back to the plaintiff (who always retained the burden of persuasion), and the plaintiff then has the opportunity to demonstrate "that the proferred reason was not the true reason for the employment decision," *St. Mary's*, 509 U.S. at 507–508, 113 S.Ct. 2742 (*quoting Burdine*, 450 U.S. at 256, 101 S.Ct. 1089) "and that race was." *St. Mary's*, 509 U.S. at 508, 113 S.Ct. 2742.

### (c) *Continuing Violations Doctrine*

First, Defendant moves to dismiss the complaint insofar as it alleges acts that occurred more than 300 days prior to the date when Plaintiff filed his charge of discrimination with the EEOC, or March 4, 1997. *See* 42 U.S.C. § 2000e–5(e)(1). Plaintiff, in opposing the motion, in effect urges the Court to apply the continuing violation doctrine in order to resuscitate these otherwise time-barred claims. (I say "in effect" because Plaintiff's brief nowhere mentions this doctrine, though it

appears to argue the substance of the doctrine.)  This the Court declines to do.

■■■ The continuing violations doctrine is highly disfavored in this Circuit.  *See Meckenberg v. New York City Off-Track Betting,* 42 F.Supp.2d 359, 371 (S.D.N.Y.1999);  *Riedinger v. D'Amicantino,* 974 F.Supp. 322, 325 (S.D.N.Y.1997).  It applies only when discrimination is accomplished by a specific policy or mechanism, such as discriminatory seniority lists and employment tests, *see Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir. 1993), or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.  *See Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).  It is well settled that multiple instances of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.  *See Lambert v. Genesee Hospital,* 10 F.3d at 53.

■■■ Here, the Court has no basis on which to apply the continuing violation doctrine.  The Plaintiff alleges a number of discrete acts that he contends discriminated against him.  He has come forward with no evidence of any specific policy or mechanism for discrimination in place.  Nor has he produced evidence of specific and related instances of unlawful discrimination that Barr allegedly permitted to continue unremedied for an overly long period.  All Plaintiff has done is to say, "These things happened to me, and I think they happened to me because I am black."  The only link between them is the allegedly racial nature of the discrimination.  If that were all that was necessary to make otherwise unrelated acts of discrimination "specific and related," then every case where a plaintiff alleges multiple instances of discrimination would fall under the continuing violations doctrine.  Under Second Circuit precedent, this is not the rule.  Defendant's motion to preclude consideration

of acts that took place prior to March 4, 1997 is granted.

(d) *Failure to Specify Claims in EEOC Charge*

Defendant next moves to dismiss Plaintiff's claims that he was retaliated against for protesting discriminatory activity, on the ground that neither color nor retaliation was alleged on the face of his EEOC charge.  Plaintiff admits that he failed to check either the color or the retaliation box on the charge form, but claims that these matters were placed before the Commission in the form of "Documentary Evidence" and also contends that they were reasonably related to the charge he did make explicitly, which was race discrimination.

■■■ The Court denies the motion insofar as it seeks to dismiss the claim of color discrimination.  Frankly, to the uninitiated (which most charging parties are), the difference between race discrimination and color discrimination is imperceptible.  Actually, it is virtually imperceptible to this court.  It has been repeatedly held that race and ethnicity discrimination are reasonably related to each other, *see Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988) (en banc), and after reviewing the materials Plaintiff appended to his charge, I have no doubt that his allegations of race and color discrimination are not only reasonably related but indistinguishable.

The same cannot be said of his retaliation claims.  Retaliation under Title VII has a specific meaning:  retaliation for exercising one's right to complain about activity that violates the statute.  *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000);  *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996);  *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995).

A careful review of the Plaintiff's "documentary evidence" does not reveal anything that would have put the EEOC on notice that Mr. Ofudu was making any

allegation of retaliation for engaging in statutorily protected activity. Therefore, to the extent he seeks to recover for retaliation, Defendant's motion for summary judgment of dismissal is granted.

Neither Plaintiff's EEOC complaint and the appended materials nor his pro se complaint contains a national origin claim. The time for amending the complaint has long since passed. Moreover, the "documentary evidence" does not contain material that would have alerted the EEOC that Plaintiff believed himself to be the victim of national origin discrimination. In particular, Plaintiff's contentions that he was criticized for being difficult to understand are too general and conclusory to permit an inference that Plaintiff was alleging national origin discrimination. Therefore, were a motion to amend to be made at this late stage of the proceedings, the Court would decline to grant it.

(e) *Failure to Raise Material Question as to Discriminatory Motive*

The remainder of Defendant's motion for summary judgment focused on an alleged failure by Plaintiff to come forth with any evidence from which a rational jury could find that he was the victim of race or color discrimination or that he worked in an environment that was hostile to him because of his race. The Court will pass over Defendant's argument that Plaintiff has failed to make out a prima facie case of race/color discrimination, because the Court concludes that Plaintiff's "evidence" of discrimination is limited to conclusory ·statements that are not supported by the hard evidence necessary to defeat a summary judgment motion. The same is true of Plaintiff's claim that he was subjected to hostile environment discrimination—a claim that cannot be made out by citing to "isolated remarks or occasional episodes of harassment." *Tomka v.· Seiler Corp.*, 66 F.3d 1295, 1306, n. 5 (2d Cir. 1995). Plaintiff's responsive papers, including what is left of his Rule 56.1 Statement, do not set forth evidence; they

merely parrot conclusions. It is not enough that Plaintiff entertained some subjective perception that people were hostile to him or that they did not like him because he was black. Plaintiff must come up with something more tangible than "I feel that this action was hostile to me—I am black—therefore, it must have been motivated by race discrimination." *See Arroyo v. Westlb Administration, Inc.*, 54 F.Supp.2d 224, 231 (S.D.N.Y.1999); *see also Richardson v. Newburgh Enlarged City School Dist.*, 984 F.Supp. 735, 744 (S.D.N.Y.1997).

Plaintiff does not offer any evidence that his co-workers took adverse actions against him because he was black. Indeed, Plaintiff testified at his deposition that he had no idea why his colleagues allegedly singled him out for adverse treatment. He is not permitted to go back on that statement now in order to defeat the motion for summary judgment.

Plaintiff is under a misapprehension when he asserts, through counsel, that he is entitled to a trial simply because he has established a prima facie case (which the Court will assume to be true for purposes of this decision only). On the record before me, Defendant has met its burden to articulate a non-discriminatory reason for the actions taken against Plaintiff—namely, that he was not very good at his job, despite the extra attention devoted to him by Barr's supervisors for over two years, and that he was confrontational and utterly unable to get along with his co-workers. The prima facie case now becomes irrelevant; Plaintiff must establish his right to a jury trial by proffering some evidence from which a rational juror could conclude that he was criticized and ultimately fired because of his race/color. But he has not offered so much as a scintilla of evidence from which a jury could conclude that Defendant's actions were race-based. That Plaintiff feared he might become a victim of race discrimination does not mean that he has evidence that he was a victim of race discrimination.

Due to a complete absence of proof on Plaintiff's part, Defendant's motion for summary judgment is granted and the complaint is dismissed in its entirety.

This constitutes the order and decision of the Court.